UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID CZAPIEWSKI,

       Plaintiff,

v.                   Case No. 25-cv-193-pp

JOSEPH KAWALSKI and JOHN DOE 1,

       Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 7), DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (DKT. NO. 11), DENYING AS MOOT PLAINTIFF'S MOTION TO PROCEED WITHOUT INITIAL FEE (DKT. NO. 16), DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 18), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DKT. NO. 19) AND SCREENING THIRD AMENDED COMPLAINT**

  Plaintiff David Czapiewski, who is incarcerated at the Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 7, denies as moot his motion for leave to file a second amended complaint, dkt. no. 11, grants his motion for leave to file a third amended complaint, dkt. no. 19, and screens his third amended complaint, dkt. no. 19-1. This decision also denies as moot the plaintiff's motion to proceed without initial fee, dkt. no. 16, and denies his motion for preliminary injunction, dkt. no. 18.

1

**I.     Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 7)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 14, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $8.92. Dkt. No. 10. The court received $17.84 on March 24, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.[1]

**II.    Motion for Leave to File Second Amended Complaint (Dkt. No. 11) and Motion for Leave to File Third Amended Complaint (Dkt. No. 19)**

Under Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course" within twenty-one days of serving the complaint or, if the defendants have answered, within twenty-one days after service of the responsive pleading. The plaintiff filed his original complaint on February 7, 2025. Dkt. No. 1. Only a week later, on February 14, 2025, the court received from the plaintiff an amended complaint. Dkt. No. 9. At that

---

[1] On March 18, 2025, the plaintiff filed a motion to asking the court to waive his initial partial filing fee. Dkt. No. 16. Because the court has received that initial partial filing fee, it will deny that motion as moot (unnecessary).

2

point, the original complaint had not been served (because the court had not screened it and ordered it served on the defendants) and no responsive pleading had been filed. So the plaintiff wasn't required to seek permission to amend his complaint, and his amended complaint became the "operative" complaint.

Ten days later, on February 24, 2025, the court received from the plaintiff a motion for leave to file a second amended complaint, dkt. no. 11, and a proposed second amended complaint, dkt. no. 11-1. Because the plaintiff already had filed his one, "as a matter of course" amended complaint, dkt. no. 9, he could amend again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) instructs the court to "freely give leave when justice so requires." Had it addressed the motion sooner, the court likely would have granted it, given the early stage of the case and the fact that the defendants had not yet been served. But due to other matters (the court has hundreds of other cases), the court did not promptly rule on the plaintiff's motion for leave to file a second amended complaint. On April 14, 2025—about seven weeks after the court received the motion for leave to file a second amended complaint—the court received from the plaintiff a motion to file a *third* amended complaint. Dkt. No. 19. Again, the plaintiff attached to that motion a proposed third amended complaint. Dkt. No. 19-1.

So the court has pending two motions for leave to file amended complaints—the February 24, 2025 motion for leave to file a second amended complaint and the April 14, 2025 motion for leave to file a third amended

3

complaint. "It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void." Flannery v. Recording Indus. Ass'n of America, 354 F.3d 632, 638 n.1 (7th Cir. 2004) (citing Fuhrer v. Fuhrer, 292 F.2d 140, 144 (7th Cir. 1961)). The plaintiff's February 9, 2025 amended complaint "superseded"—took the place of the original complaint. If the court had ruled more quickly on the plaintiff's motion for leave to file a second amended complaint, the second amended complaint would have taken the place of the amended complaint. Now that the plaintiff has filed a motion for leave to file a *third* amended complaint, there is no need for a second amended complaint.

The court will deny as moot (no longer necessary) the plaintiff's motion for leave to file a second amended complaint. Dkt. No. 11. The court will grant the plaintiff's motion for leave to file a third amended complaint, dkt. no. 19, and will order the Clerk of Court to docket the proposed third amended complaint (Dkt. No. 19-1) as the "operative" complaint. This order screens the third amended complaint.

### III. Screening the Third Amended Complaint (Dkt. No. 19-1)

#### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

4

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

5

Case 2:25-cv-00193-PP     Filed 05/19/25     Page 5 of 13     Document 23

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff sues Joseph Kawalski, who is a nurse clinician, and John Doe 1, who is health services manager (HSM) at the Green Bay Correctional Institution. Dkt. No. 19-1 at ¶¶7-8. The plaintiff states that he has been diagnosed with schizoaffective disorder and an anxiety disorder and has been prescribed Aripiprazole (Abilify), a psychotropic medication, to take monthly. Id. at ¶15.

The plaintiff alleges that on September 9, 2024, Kawalski gave him his injection of Aripiprazole and that he was supposed to schedule the plaintiff's next injection. Id. at ¶¶11-12. The plaintiff states that he received his next injection on October 30, 2024, which was about three weeks late. Id. at ¶13. He allegedly wrote numerous requests asking for his injection. Id. at ¶14. The plaintiff alleges that if untreated, he becomes confused and paranoid and that he hallucinates. Id. at ¶16. Due to paranoia, the plaintiff allegedly stopped eating for nine days and lost over forty pounds. Id. at ¶17. He states that the denial of medication caused profuse sweating, hallucinations of his deceased daughter's mother's body and hallucinations of his deceased father repeatedly saying the plaintiff was a "pure unadulterated blabbering idiot[.]" Id. at ¶18. The plaintiff states that this is the reason he punched a wall and head-butted a door, causing swollen knuckles and a bloody swollen head. Id.

6

The plaintiff allegedly suffered migraines and had difficulty breathing from not having his injection. Id. at ¶19. He says that "due to non-titration of Abilify," he suffered increased psychosis and was "strapped down" twice. Id. The plaintiff states that the defendants did not inform Dr. Freeman of the late dose so he could make an informed decision on how to treat him. Id.

The plaintiff alleges that if the defendants had "done their duties" he would not have sustained the above-described injuries. Id. at ¶20. He claims that Kawalski's intentional failure to timely schedule the plaintiff's Aripiprazole injection violated his constitutional rights. Id. at ¶22. The plaintiff also claims that John Doe's failure to monitor the plaintiff's care by ordering Kawalski to schedule or administer the medication violated the plaintiff's constitutional rights. Id. at ¶23. The plaintiff seeks declaratory relief, injunctive relief and monetary damages. Id. at pages 25-27.

C. Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Cesal, 851 F.3d at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an incarcerated individual's pain. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (citing Estelle, 429 U.S. at 104-05).

The plaintiff may proceed on an Eighth Amendment claim against Kawalski in his individual capacity based on allegations that Kawalski intentionally did not schedule and timely provide the plaintiff's next medication injection. The plaintiff alleges that he received the dose three weeks late, which had serious consequences. The plaintiff also alleges that he wrote numerous requests to receive his medication. Construing the complaint liberally, the court finds that the plaintiff has alleged that he submitted requests to Kawalski and John Doe. The plaintiff also may proceed against John Doe in his individual capacity for the delay in receiving the medication.

After the court issues a scheduling order, the plaintiff must use discovery to identify the name of the John Doe defendant.

## IV.     Plaintiff's Motion for Preliminary Injunction (Dkt. No. 18)

The plaintiff has asked the court to issue a preliminary injunctive and/or protective order. Dkt. No. 18. He states that staff members of Green Bay's health service unit (HSU) have retaliated against him by not providing him medical care for a COVID vaccine. Dkt. No. 18 at ¶4. The plaintiff also states that he previously has been targeted by the HSU for unjustified co-pays and that he has been denied medical care. Id. at ¶3. He seeks an injunction ordering the defendants to transfer him to another institution "to stop any further violations which are likely to occur." Id. at ¶5.

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that (1) plaintiff has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) plaintiff will likely suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Mays, 974 F.3d at 818 (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits,

9

the less the balance of harms needs to weigh in his favor, and vice versa." Mays, 974 F.3d at 818 (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of prisoner litigation, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff asks the court to order him to be transferred to another institution because he believes that HSU staff may deny him medical care and charge him unjustified co-pays like he says they have done in the past. The plaintiff's speculation that these events *may* occur does not warrant a preliminary injunction. The plaintiff's claim involves an alleged delay in receiving his medication injection. He has not alleged any current, ongoing circumstances involving his claim that warrant preliminary injunctive relief. The court will deny the plaintiff's motion for preliminary injunction.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 7.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file a second amended complaint. Dkt. No. 11.

The court **DENIES AS MOOT** the plaintiff's motion to proceed without paying the initial partial filing fee. Dkt. No. 16.

The court **DENIES** the plaintiff's motion for preliminary injunction. Dkt. No. 18.

The court **GRANTS** the plaintiff's motion for leave to file third amended complaint. Dkt. No. 19. The court **DIRECTS** the clerk's office to separately docket the proposed third amended complaint at Dkt. No. 19-1; this will be the operative complaint going forward.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the third amended complaint and this order to the Wisconsin Department of Justice for service on defendant Joseph Kawalski. Under the informal service agreement, the court **ORDERS** Kawalski to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$332.16** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 19th day of May, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**