UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID CZAPIEWSKI,

                Plaintiff,

v.                                 Case No. 25-cv-193-pp

JOSEPH KAWALSKI and
JOHN DOE 1, Health Services Manager,

                Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION OR PROTECTIVE ORDER (DKT. NO. 25), DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT (DKT. NO. 31), DENYING AS MOOT PLAINTIFF'S MOTION TO WITHDRAW PROPOSED FOURTH AMENDED COMPLAINT AND SUBSTITUTE JOHN DOE DEFENDANT (DKT. NO. 35), DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT (DKT. NO. 36), DENYING PLAINTIFF'S MOTION TO STAY PROCEEDINGS (DKT. NO. 40), DENYING PLAINTIFF'S MOTION FOR SCHEDULING CONFERENCE (DKT. NO. 41), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SIXTH AMENDED COMPLAINT (DKT. NO. 42), DENYING PLAINTIFF'S MOTION TO CONTINUE DISCOVERY AND FOR LEAVE TO FILE ADDITIONAL INTERROGATORIES (DKT. NO. 48), DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE SEVENTH AMENDED COMPLAINT (DKT. NO. 50), SCREENING SIXTH AMENDED COMPLAINT AND DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO 52)**

      Plaintiff David Czapiewski, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The court screened the plaintiff's third amended complaint and allowed him to proceed on an Eighth Amendment claim against defendant Joseph Kawalski for allegedly not scheduling and timely providing the plaintiff with his Aripiprazole

1

(Abilify) medication, which allegedly resulted in the plaintiff receiving the medication three weeks late. Dkt. No. 23 at 8. The court also allowed the plaintiff to proceed against defendant John Doe, Green Bay's health service manager, for the delay in receiving the medication. Id. Since the court screened the third amended complaint, the court has received from the plaintiff four motions to amend his complaint, dkt. nos. 31, 36, 42, 50, a motion to withdraw his fourth motion to amend and substitute John Doe defendant, dkt. no. 35, a motion for preliminary injunction or protective order, dkt. no. 25, a motion to stay case proceedings, dkt. no. 40, a motion for a scheduling conference, dkt. no. 41, a motion to continue discovery and file additional interrogatories, dkt. no. 48, and a motion asking the court to recruit him counsel, dkt. no. 52. This order addresses all these motions.

## I. Motions to Amend, Withdraw, Substitute (Dkt. Nos. 31, 35, 36, 42, 50)

The plaintiff has filed a motion for leave to file a fourth amended complaint, dkt. no. 31, a motion for leave to file a fifth amended complaint, dkt. no. 36, a motion for leave to file a sixth amended complaint, dkt. no. 42, and a motion for leave to file seventh amended complaint, dkt. no. 50. In addition to these motions to amend, the plaintiff filed a motion for leave to withdraw his fourth motion to amend and to substitute John Doe defendant. Dkt. No. 35.

In his motion for leave to file a sixth amended complaint, the plaintiff states that he moves to amend the complaint one last time, and that he would like to add a state law negligence claim against defendants Kawalski and Shane Garland. Dkt No. 42 at 1-2. The plaintiff identifies Shane Garland as the Doe

2

defendant. Id. at 2-3. Along with his sixth motion to amend, he filed a proposed sixth amended complaint. Dkt. No. 42-1.

Because the plaintiff stated that he intended his sixth motion to amend and proposed amended complaint to be his final amended complaint, the court need not consider the plaintiff's motions for leave to file his fourth and fifth amended complaints. Dkt. Nos. 31, 36. The court will deny those motions to amend as moot. Likewise, the court will deny as moot the plaintiff's motion to withdraw his proposed fourth amended complaint and substitute John Doe defendant. Dkt. No. 35.

In his motion for leave to file a seventh amended complaint, the plaintiff stated that he wanted to amend his sixth amended complaint because that pleading was not legible or grammatically correct. Dkt. No. 50. He does not move to add parties or claims. Id. The court has reviewed the plaintiff's proposed sixth amended complaint; it is legible and comprehensive. Dkt. No. 42-1. It is not necessary for him to amend the sixth amended complaint—his purported final amended complaint—a pleading that is legible and contains no grammatical errors. The court will deny as moot the plaintiff's motion for leave to file seventh amended complaint. The court will screen the sixth amended complaint, which will be the operative complaint going forward. **The court will not allow the plaintiff to make any further amendments to the complaint.**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental

3

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

B.  The Plaintiff's Allegations

In his sixth amended complaint, the plaintiff reiterates his allegations that defendant Kawalski failed to schedule his Ability injection which resulted in the plaintiff receiving the injection about three weeks late. Dkt. No. 42-1 at ¶¶11-13. The plaintiff allegedly wrote numerous requests asking for his

4

injection. Id. at ¶14. The plaintiff alleges that he has been diagnosed with schizoaffective disorder and unspecified anxiety disorder, and that these disorders require monthly treatment with Abilify. Id. at ¶15. When the plaintiff was untreated, he allegedly became confused, paranoid and had auditory and visual hallucinations. Id. at ¶16. This allegedly exacerbated his anxiety disorder and, due to paranoia, the plaintiff stopped eating and lost forty pounds. Id. at ¶¶16-17. The plaintiff states that he suffered panic attacks and profuse sweating. Id. at ¶18. Due to the hallucinations, the plaintiff allegedly became depressed and angry, punched the wall and head-butted the door, "causing swollen knuckles and swollen, bloody head on numerous occasions." Id. The plaintiff states that he had withdrawals from not having the injection, including migraines and difficultly breathing. Id. at ¶19. He also states that he experienced increased psychosis and that he was "strapped down" twice. Id.

The plaintiff alleges that the defendants failed to inform the doctor of the missed dose so that the doctor could make an informed decision on how to treat the plaintiff. Id. The plaintiff alleges that if the defendants had done their duty, he would not have suffered the injuries that he did. Id. at ¶20. The plaintiff states that the defendants knew he would suffer adverse consequences if he did not timely receive his medication. Id. at ¶21.

The plaintiff claims that Kawalski violated the plaintiff's constitutional rights when he failed to schedule the plaintiff's Abilify injection for four weeks after the September 11, 2024 injection. Id. at ¶22. He claims that Garland violated his constitutional rights by failing to monitor his care plan; the

plaintiff asserts that Garland would have corrected Kawalski by ordering him to schedule or administer the plaintiff's Abilify injection. Id. at ¶23. The plaintiff claims that the defendants' actions amounted to negligence in violation of Wisconsin state law. Id. at ¶24. He seeks declaratory relief, injunctive relief and monetary damages. Id. at pages 25-27.

C. Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Cesal, 851 F.3d at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an

incarcerated individual's pain. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (citing Estelle, 429 U.S. at 104-05).

The plaintiff may proceed on an Eighth Amendment claim against Kawalski based on his allegations that Kawalski intentionally did not schedule and timely provide the plaintiff's next medication injection. The plaintiff alleges that he received the dose three weeks late, which had serious consequences. The plaintiff also alleges that he wrote numerous requests to receive his medication. Construing the complaint liberally, the court finds that the plaintiff has alleged he submitted requests to both Kawalski and Garland. The plaintiff also may proceed on an Eighth Amendment claim against Garland for the delay in receiving the medication. The court will exercise supplemental jurisdiction over the plaintiff's state law negligence claim. See 28 U.S.C. §1367(a).

The court will grant the plaintiff's motion for leave to file the sixth amended complaint, dkt. no. 42, and will order service of that pleading on the new defendant (Garland).

## II. Motion for Preliminary Injunction or Protective Order (Dkt. No. 25)

The plaintiff has filed a second motion for preliminary injunction and protective order. Dkt. No. 25. In this second motion, he states that he incorporates by reference his supplemental addendum to his first motion for preliminary injunction. Id. at ¶2. He asserts that in its order addressing his first motion for preliminary injunction, the court did not address the issue he raised in his supplemental addendum. Id. In the supplemental addendum, the plaintiff describes wanting to add other allegations of irreparable harm. Dkt.

No. 22 at ¶2. He says that a nurse wrote inaccurate information in his health service file, including health service responses generated on April 5, 2025. Id. at ¶¶3, 7. The plaintiff references records that state that he "refused [his] dose" on October 9, 2024, and that he was then given an injection on October 30, 2024. Id. at ¶7.

In the second motion for preliminary injunction, the plaintiff states that he suffered irreparable harm from increased "episodes of psychosis" which "are predicted to be repeating." Dkt. No. 25 at ¶3. The plaintiff states that, "[a]s to irreparable injury, maintenance on long-term psychotropic medication (Abilify injection in this case) enables patients to avoid the unnecessary suffering of acute episodes of mental illness [and] without such care repeated acute episodes can be predicted." Id. at ¶4. He asserts that his "expert" testified that the occurrence of repeated episodes during which an individual becomes psychotic is accompanied by progressive deterioration in psychological and intellectual functioning, which leads to more serious impairment of a person's capability of adjustment. Id. The plaintiff states that he is "consistently in harm" and that there is no adequate remedy at law for him missing his monthly Abilify injection. Id. He requests a transfer to any other maximum-security prison in Wisconsin. Id. at ¶8.

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To

obtain a preliminary injunction, a plaintiff must show that (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) he will likely suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Id. (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Id. (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of litigation by incarcerated individuals, the scope of the court's authority to issue an injunction is limited by the Prison Litigation Reform Act ("PLRA"). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

On May 19, 2025, the court denied the plaintiff's first motion for preliminary injunction in which he also sought transfer to another institution. Dkt. No. 23 at 1. In his first motion, the plaintiff said that he believed that that the HSU staff might deny him medical care and charge him unjustified co-pays, which he said they had done previously. Dkt. No. 18 at ¶¶3, 5. In denying the plaintiff's motion, the court explained that his speculation that these events *might* occur does not warrant a preliminary injunction. Dkt. No. 23 at 10. The court explained that the plaintiff's claim involved an alleged delay in receiving his medication injection and that he had not alleged any current, ongoing circumstances involving his claim that warranted preliminary injunctive relief. Id.

In the plaintiff's second motion for preliminary injunction, he again says that he wants to move to a new institution. Although the plaintiff states that he is "consistently in harm," he has not asserted that he has missed more Abilify injections. The plaintiff does not allege any ongoing violation of his rights related to his claims. He is not entitled to injunctive relief. The court will deny his motion for preliminary injunction or protective order.

### III. Plaintiff's Motion to Stay Proceedings (Dkt. No. 40)

The plaintiff asks the court to stay these proceedings until he is allowed to buy paper or to use his thumb drive and make copies. Dkt. No. 40. He states that he has been banned from buying paper with available funds, he has only twenty pieces of paper and staff will not let other incarcerated individuals give him paper. Id. at 2. The plaintiff also states that staff will not allow him to

receive legal mail from defendant Kawalski's lawyer. Id. at 3. He says that the mail has "been here for a week" and that staff cites a "3 man escort restriction as the reason they cannot get him out to receive this mail." Id. at 3-4.

The plaintiff has not demonstrated that the court needs to stay the proceedings. He describes currently having twenty pieces of paper, but does not explain why he needs more. Also, since filing his motion, it appears that the plaintiff obtained paper because the court has received from him a number of documents, totaling more than twenty pieces of paper. Regarding legal mail, the court understands that because he is incarcerated, the plaintiff may experience delays in receiving his mail. If the plaintiff believes that Green Bay staff is not delivering his legal mail from this case, he should notify the court or counsel for defendants. The court will deny the plaintiff's motion to stay.

## IV. Motion for Scheduling Conference (Dkt. No. 41)

The plaintiff has filed a motion asking the court to hold a scheduling conference. Dkt. No. 41. This order will direct service of the plaintiff's sixth amended complaint on the new defendant (Garland). Once the defendants file a responsive pleading to the sixth amended complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and filing dispositive motions. There is no need for a scheduling conference. The court will deny the plaintiff's motion.

## V. Motions for Continuance of Discovery and to File Additional Interrogatories (Dkt. No. 48)

The plaintiff moves to continue the time to conduct discovery, and he seeks leave to file additional interrogatories over the amount permitted by the

Federal Rules of Civil Procedure. Dkt. No. 48 at 1. As explained above, once the defendants have responded to the sixth amended complaint, the court will issue a scheduling order. ***The parties must not begin to conduct discovery until the court issues that scheduling order***. The plaintiff should not submit discovery requests to the defendants until the court issues the scheduling order. If the plaintiff already has submitted discovery requests, the defendants need not respond to them until the court issues the scheduling order. The court advises the plaintiff that before he may ask the court for permission to serve more than twenty-five interrogatories on a party, he first must ask that party to agree to more interrogatories. See Civil Local Rule 33(a)(3) (E.D. Wis.). The court's scheduling order will contain more information about discovery. The court will deny the plaintiff's motions for continuance and to file additional interrogatories because they are premature.

## VI. Motion requesting recruitment of counsel/declaration (Dkt. No. 52)

Finally, the court has received from the plaintiff a motion asking the court to recruit a lawyer to represent him. Dkt. No. 52. He says he has written three lawyers; two have responded and the third has not. Id. at 2. He recounts that there are two defendants. Id. at 4. He says that he has received letters from defense counsel. Id. at 5-6. He says that because he is suing one state employee and one "non-state" employee, he is confused about the subtleties of the law. Id. at 6. He says that he has amended the complaint seven times "out of confusion due to mental illness and increased psychosis brought on by injury sustained in this lawsuit . . . ." Id. at 7. He says that he may need an

expert regarding causation and injury. Id. at 7-8. He also says that Kowalski's attorney is seeking discovery, but that Kowalski hasn't provided the plaintiff any; the plaintiff believes he's being taken advantage of due to his mental illness. Id. at 8-9. The plaintiff alleges that he is being bullied for personal information, even though discovery has not begun. Id. at 9-10.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, to show the court that he has tried to find a lawyer on his own, the plaintiff must contact at least three attorneys and provide the court with (1) the attorneys' names and addresses, (2) the date(s) and the way the plaintiff tried to contact them, and (3) the attorneys' responses.

After the plaintiff makes that reasonable attempt to hire a lawyer, the court then must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[W]hether to recruit counsel 'is a difficult decision: Almost everyone would benefit from

13

having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for those cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff has demonstrated that he has tried to find counsel on his own. He provided two letters from attorneys advising him that they could not represent him. Dkt. NO. 52-1 at 1-2. But the plaintiff has not demonstrated that, at this point in the case, he cannot handle it himself. The plaintiff has filed many documents, showing that he is quite capable of communicating with the court. The court is able to understand the arguments he has made in those documents. He is articulate and is able to communicate clearly, despite his mental health issues. As the court noted above, neither party should be asking for discovery—as the court has explained, it will not issue a scheduling order setting deadlines for discovery until the defendants have answered the sixth amended complaint. So the plaintiff need not do anything right now other than wait for the defendants' response to the sixth amended complaint, and for this court's scheduling order (which will provide him with additional information about the discovery process). Once the court has set those deadlines, the plaintiff will be free to make reasonable, proportionate requests of the defendants regarding documents and information he believes he needs to pursue his case (and, of course, the defense may make reasonable requests of the plaintiff).

The plaintiff's concerns about needing an expert witness, or the subtleties of the law relating to state vs. non-state defendants, are premature. If the case gets to the point where these issues arise, he may renew his request for the court to recruit him a lawyer.

**VII. Conclusion**

The court **DENIES** the plaintiff's motion for preliminary injunction or protective order. Dkt. No. 25.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file fourth amended complaint. Dkt. No. 31.

The court **DENIES AS MOOT** the plaintiff's motion to withdraw proposed fourth amended complaint and substitute John Doe defendant. Dkt. No. 35.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file fifth amended complaint. Dkt. No. 36.

The court **DENIES** the plaintiff's motion to stay proceedings. Dkt. No. 40.

The court **DENIES** the plaintiff's motion for scheduling conference. Dkt. No. 41.

The court **DENIES** the plaintiff's motion for continuance of discovery and to file additional interrogatories. Dkt. No. 48.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file seventh amended complaint. Dkt. No. 50.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to recruit him counsel. Dkt. No. 52.

The court **GRANTS** the plaintiff's motion for leave to file sixth amended complaint. Dkt. No. 42. The court **DIRECTS** the clerk's office to separately docket the proposed sixth amended complaint at Dkt. No. 42-1; this will be the operative complaint going forward.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the sixth amended complaint and this order to the Wisconsin Department of Justice for service on defendant Shane Garland. Under the informal service agreement, the court **ORDERS** the defendants to file a responsive pleading to the sixth amended complaint within sixty (60) days.

Dated in Milwaukee, Wisconsin this 29th day of December 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**